IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**SAMUEL SCUDDER**                                                                  **PLAINTIFF**

**V.**                              **CASE NO. 4:16-CV-00297-BD**

**DOLGENCORP LLC**                                                                 **DEFENDANT**

**ORDER**

**I.    Background**

Plaintiff Samuel Scudder filed this complaint claiming Defendant Dolgencorp LLC d/b/a/Dollar General Stores ("Dollar General") violated the reemployment and anti-discrimination provisions of the Uniformed Services Employment and Reemployment Rights Act ("USERRA").[1] (Docket entry #1) Mr. Scudder filed a motion for partial summary judgment on the issue of liability. (#21) Dollar General filed a cross-motion for summary judgment on both of Mr. Scudder's USERRA claims. (#25) The parties have responded to each other's motions and have provided affidavits, exhibits, and deposition testimony. (#21-#38)

**II.   Undisputed Facts**

Samuel Scudder was a sergeant in the Arkansas National Guard when he applied and was hired to work at Dollar General in June of 2013. In September of 2013, while Mr. Scudder was still active in the National Guard, Dollar General promoted him to store

---

[1] The parties have consented, in writing, to the jurisdiction of the United States Magistrate Judge. (#7)

manager at its Benton Parkway store in Benton, Arkansas. In April of 2014, Mr. Scudder provided Dollar General with his military orders indicating that he was being deployed to active duty. He knew that Matrix Absence Management ("Matrix"), a third-party vendor, acted as Dollar General's leave coordinator, and he coordinated with Matrix to arrange for his military leave.

While on leave, Mr. Scudder sustained injuries during military action. He remained deployed with his unit through December of 2014. At that time, his commanders assigned him to a unit for medical transition out of the military. He remained in that status at Fort Leonard Wood, Missouri from December, 2014 through February, 2016. While at Fort Leonard Wood, Mr. Scudder sent his orders to Matrix, thus providing notice for continuing military leave to Dollar General. He sought and was approved for leave through April 1, 2016. Mr. Scudder dealt with Matrix almost exclusively regarding his military leave.

Matrix Integrated Claims Examiner, Jessica Morentin, contemporaneously documented her March 31, 2016 phone conversation with Mr. Scudder, including her understanding that Mr. Scudder intended to resign from Dollar General. Based on Ms. Morentin's belief that Mr. Scudder told her on their March 31 phone call that he did not intend to return to work at Dollar General and wanted to resign, Ms. Morentin emailed Dollar General's Leave Administration Department notice on April 4, 2016, that Matrix had closed Mr. Scudder's leave because "Employee advised that he does not plan to return to work on 04/02/16."

Stacy Garrison, an HR Shared Services Support Specialist for Dollar General, responded to Ms. Morentin asking, "Can you clarify – did Samuel indicate he resigned?" Ms. Morentin responded to Ms. Garrison on April 5, 2016, that "Samuel advised that he had been attempting to contact someone at Dollar General to resign. Samuel advised that he would not be going back to Dollar General."

In reliance on Matrix's report of Mr. Scudder's resignation notification indicating that he "would not be going back to Dollar General," Dollar General's HR Shared Services Department processed the separation of Mr. Scudder's employment, effective April 5, 2016. On April 11, 2016, Wesley Ramey, a Field HR Coordinator for Dollar General, sent Mr. Scudder an exit survey via email. Mr. Scudder replied to Mr. Ramey's email as follows:

> Hello sir,
> I'm emailing you to see if maybe you car[e] B[e]c[ause] apparently the rest of the company does not. I'm a store manager for you in region 59 well I guess getting this I use to be. I was called to active duty in support of operation enduring freedom in Afghanistan. I was injured while overseas and have only been able to get ahold of one person the whole time. That would be Darren Lomas[.] I've tried calling hr [sic] directly and I left a voicemail. I've also called the current dm [sic] and had a store manager email him on my behalf. I really enjoyed working for dollar general and would've loved to continue to work for dollar general.

(#21-3 at 4)

Mr. Scudder never demanded reemployment to his Store Manager position at Benton Parkway. He applied for a Store Manager position in Bryant, Arkansas, *Id*. at 6-10, but was not hired for the job. He was told that, by the time he applied, Dollar General had already made a conditional offer of employment to another person.

3

While he was still on leave, Mr. Scudder had applied for Social Security Disability Insurance ("SSDI") benefits with the Social Security Administration ("SSA"). On December 6, 2016, a social security administrative law judge ("ALJ") approved his application for benefits, finding that he had become totally disabled on December 10, 2014. Mr. Scudder was awarded SSDI benefits, which he continues to receive.

## III. **Summary Judgment Standard**

A moving party is entitled to summary judgment only if the evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine dispute about any fact that is important to the outcome of the case. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).

Here, Mr. Scudder and Dolgencorp have both moved for summary judgment. A party moving for summary judgment, must come forward with evidence showing that there is no real dispute about any fact that would make a difference in how the case is decided. If the moving party meets this burden, the opposing party is obligated to produce evidence that contradicts the moving party's evidence. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*). If the opposing party fails to meet evidence with contradictory evidence that shows a real dispute, the Court must grant summary judgment in the moving party's favor; and there will be no trial. *Celotex Corp.,* 447 U.S. at 322–23, 106 S.Ct. at 2552.

## IV. Discussion

### A. *Reemployment*

USERRA's reemployment provision provides:

**(a)** Subject to subsections (b), (c), and (d) and to section 4304, any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if—

**(1)** the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer;

**(2)** the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and

**(3)** except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).

38 U.S.C.A. § 4312. The parties do not dispute that Mr. Scudder gave Dollar General advanced notice of his deployment or that the length of his absence did not exceed five years. The parties do dispute, however, whether Mr. Scudder submitted an application for reemployment as required by 38 U.S.C. § 4312(a)(3).

The statute does not define what it means to submit an application for reemployment, but courts have adopted a case-by-case determination that focuses on the intent and reasonable expectations of both the former employee and the employer in light of all of the circumstances. *Shadle v. Superwood Corp.*, 858 F.2d 437, 439 (8th Cir. 1988); *McGuire v. United Parcel Service*, 152 F.3d 673, 676-77 (7th Cir. 1998) (returning service member's inquiry with his supervisor, who communicated that he

needed to talk to the human resources department about the process for re-employment, did not constitute reasonable notice to a large corporation that he wanted his job back).

Dollar General needed to receive notice from Mr. Scudder that he was a returning serviceman, previously employed, and was seeking reemployment. *McGuire*, 152 F.3d at 677. A request for reemployment under USERRA must be made to an agent or representative of the employer who has apparent responsibility for receiving employment applications. 20 C.F.R. § 1002.119. Accordingly, notice to one person may or may not be enough to constitute an application for reemployment under the statute. *McGuire*, 152 F.3d at 677. Furthermore, reasonable notice to a large corporation is different from reasonable notice to a small employer. *Id*. (quoting *Shadle*, 858 F.2d at 439-440) Large employers cannot be expected to train all of their supervisors in the intricacies of employment law, but they can train supervisors to refer personnel matters to those trained to handle them properly. *Id*. at 677.

Mr. Scudder claims that his email to Wesley Ramey in response to the exit survey and his application for the Bryant store position were sufficient applications for reemployment to meet the requirements under the statute. Mr. Scudder's claim ignores important undisputed facts.

First, Mr. Scudder's argument overlooks the fact that he told Matrix Integrated Claims Examiner Jessica Morentin that he, "needed to find out if I need to put in my two weeks because I can't return to work." (#32-1 at 14) Mr. Scudder had communicated with Matrix many times throughout his deployment and understood Matrix to be Dollar General's third-party administrator for his USERRA leave, but he never asked a Matrix

6

representative for reemployment. Instead, Mr. Scudder communicated to Ms. Morentin that he would not be able to restart his employment with Dollar General. (#21-3 at 2)

Second, neither his email to Mr. Ramey nor his application for the Bryant store position clearly requested reemployment to his Benton Parkway management job. In his email to Mr. Ramey, Mr. Scudder stated that he really "enjoyed" working for Dollar General and "would've loved to continue to work for Dollar General." Both statements speak of his *past* employment, reinforcing Dollar General's contention that he had resigned.

Moreover, in the email Mr. Scudder never asked Mr. Ramey for reemployment in his Benton Parkway management position. See *Shadle*, 858 F.2d at 440 (asking for an application from guard at shack is not sufficient notice to the employer). While Mr. Scudder's application for a management position in the Bryant store showed an interest in a new position with Dollar General, it was not a demand to Dollar General for reemployment in his prior position.

Finally, Matrix reported Mr. Scudder's resignation to Dollar General. When Ms. Garrison, an HR Shared Services Support Specialist for Dollar General, received Ms. Morentin's communication, she requested clarification asking, "Can you clarify – did Samuel indicate he resigned?" Ms. Morentin responded to Ms. Garrison, that "Samuel advised that he had been attempting to contact someone at Dollar General to resign. Samuel advised that he would not be going back to Dollar General." It was reasonable for Dollar General to expect that, if Mr. Scudder wanted reemployment with Dollar General, he would have communicated that to his Matrix representative. The undisputed evidence

7

is contrary to Mr. Scudder's claim that he clearly demanded reemployment as required by USERRA.

B.   *Waiver*

The Eighth Circuit has held that resignation waives a service member's right to reemployment. See *Paisley v. City of Minneapolis*, 79 F.3d 722, 724 ("We have held that reemployment rights under the Act may be waived if the employee does so 'clearly and unequivocally.'") (quoting *Smith v. Missouri Pac. Transp. Co.*, 313 F.2d 676, 680 (8th Cir. 1963)). It is undisputed that Mr. Scudder told Ms. Morentin that he wanted to speak with someone at Dollar General to "find out if I need to put in my two weeks," because he would not be able to return to work on April 2, 2016. Relying on Mr. Scudder's representations, Matrix reported to Dollar General that Mr. Scudder had resigned. Dollar General was entitled to rely on Matrix's report.

Mr. Scudder's actions also indicate a waiver of his right to reemployment. When he was hired by Dollar General, Mr. Scudder certified that he understood the essential functions of the job he was taking included "[f]requent walking and standing" and "[f]requent and proper lifting of up to 40 pounds; occasional lifting of up to 55 pounds." In responses to discovery requests, Mr. Scudder admitted that, due to injuries he suffered on active duty, he would be unable to lift his hands above his head with ease and it would be painful to do so; he could not stand for significant periods of time; he could not stock top shelves; and he could not pick up anything heavy. (#25-3 at 4) Additionally, at his deposition, Mr. Scudder testified to being treated for PTSD and short-term memory loss. (#32-1 at 16, 18-19) It is reasonable to assume that Mr. Scudder recognized his inability

8

to perform the essential functions of his prior position with Dollar General and chose to resign.

Mr. Scudder now contends that he might possibly qualify for reemployment with Dollar General if it provided him accommodations such as assistance with stocking shelves and allowing him to be seated while he worked for at least half of the day or more. (#25-3 at 4-5, #32 at 3-4, #36 at 1) Mr. Scudder has not provided any evidence from a medical source indicating that he could return to work with the suggested accommodations, and his contention contradicts his application for SSDI benefits, where he reported that he had been unable to work since December 10, 2014. (#25-2 at 4, 12)

Moreover, setting aside the issue of accommodations for his physical limitations, there is no way to reconcile his contention that he could be reemployed with the ALJ's finding that he could not "sustain concentration, persistence of pace on a routine, continuous basis to complete the required tasks of a job in an eight-hour workday, 40 hour workweek." (#25-2 at 23)

The ALJ concluded that Mr. Scudder was unable to work due to his severe impairments (#25-2 at 21-26), and Mr. Scudder's application for SSDI benefits and his statements to the ALJ regarding his inability to work are consistent with his resignation from Dollar General. See *Brown v. Con-way Freight, Inc.*, 2016 WL 861210, at *6-7 (N.D. Ill 2016)(holding that serviceman was judicially and equitably estopped from pursuing his claim for reemployment under USERRA, because he could not legally represent that he was permanently injured and at the same time say his injury was temporary in order gain another benefit).

C.  *Discrimination*

Finally, Mr. Scudder claims that Dollar General violated USERRA's anti-discrimination provision by not rehiring him. See 42 U.S.C. §4311. USERRA's anti-discrimination provision, however, is not applicable here. "Section 4311 applies *after* reemployment has occurred and 'prohibits discrimination with respect to any benefit of employment against persons who serve in the armed services after they return from a deployment *and are reemployed*.'" *Clegg v. Ark. Dep't of Correction*, 496 F.3d 922, 930 (8th Cir. 2007) (citation omitted) (emphasis added). Because Dollar General never reemployed Mr. Scudder, USERRA's anti-discrimination provision is not applicable here.

**V.    Conclusion**

For these reasons, Mr. Scudder's motion for summary judgment (#21) is DENIED. Dolgencorp LLC's motion for summary judgment (#25) is GRANTED, and Mr. Scudder's claims against Defendant Dolgencorp LLC are DISMISSED, with prejudice.

IT IS SO ORDERED this 18th day of August, 2017.

_____
UNITED STATES MAGISTRATE JUDGE